Express Publishing Company v. Commissioner.
Express Publ. Co. v. Commissioner
Docket No. 2565.
United States Tax Court
1945 Tax Ct. Memo LEXIS 299; 4 T.C.M. (CCH) 213; T.C.M. (RIA) 45061; February 10, 1945
Gilbert M. Denman, Esq., for the petitioner. Frank B. Schlosser, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This controversy involves a deficiency in income taxes for the calendar year 1941 in the amount of $1,594.75. The sole issue is whether the petitioner is entitled to deduct the sums of $3,283.75 and $2,128.75 paid to Mrs. Carrie S. Frost and Mrs. W. Dorsey Brown, respectively, during the taxable year 1941 for services rendered the petitioner as vice-presidents and directors of the petitioner. The case was submitted on the following stipulation: 1. It is hereby stipulated and agreed that the services rendered by Mrs. Carrie S. Frost and Mrs. W. Dorsey Brown to petitioner during the taxable year 1941 were substantially the same as the services *300 rendered by them during the years 1939 and 1940. 2. It is further stipulated that the record made before this Court in the case of this petitioner under Docket No. 112226 insofar as applicable to the services rendered by Mrs. Carrie S. Frost and Mrs. W. Dorsey Brown shall constitute evidence in this proceeding for all purposes. 3. It is also stipulated and agreed that during the year 1941 Thornton Hall, secretary of petitioner, devoted all of his time to the affairs of petitioner; owned one share of common stock, and received as compensation for his services the sum of $4,470.00. 4. The return for the taxable year 1941 was filed with the Collector of Internal Revenue for the First District of Texas, at Austin, Texas. Pursuant to such stipulation we make the following Findings of Fact Petitioner is a Texas corporation having its principal place of business at San Antonio, Texas. Its income tax return for the calendar year 1941 was filed with the collector of internal revenue at Austin, Texas. Petitioner is engaged in the publication of the San Antonio Daily and Sunday Express and the Evening News. These are the principal newspapers serving the territory between San Antonio *301 and El Paso, Texas, and San Antonio and the Rio Grande River. Petitioner's newspaper business was organized in 1865. Shortly thereafter Frank Grice became its principal owner and manager and continued in such capacities until his death about 1905. He was succeeded by his widow who published the papers for about five or six years, whereupon her son-in-law continued the business until succeeded by Frank G. Huntress, who is the president of the petitioner. Grice and his family built the papers to a position of prestige. The Daily Express had a circulation of 71,000, the Evening News, 76,000 and the Sunday Express, 120,000. The gross income varied from one and one-half million dollars to two million dollars per year, derived principally from advertising, about 75 per cent of which was of a character appealing to women. Its average earnings have been large. After the death of Frank Grice and his widow, the principal surviving member of the Grice family was the widow of Frank Grice, Jr., now Mrs. Carrie S. Frost. The husband of Mrs. W. Dorsey Brown was vice-president and a director of the petitioner at the time of his death in 1925. During the taxable year the officers of the petitioner *302 were: Frank G. Huntress, president; Mrs. Carrie S. Frost, first vicepresident; Mrs. W. Dorsey Brown, second vice-president; Thorton Hall, secretary; and Frank G. Huntress, Jr., treasurer. Both Mrs. Frost and Mrs. Brown were directors. During the taxable year Mrs. Frost was paid the sum of $3,283.75 and Mrs. Brown was paid the sum of $2,128.75 for services which they rendered the petitioner. The president, Frank G. Huntress, received a salary of $25,000 and the secretary, Thornton Hall, the sum of $4,470. Prior to 1922, Mrs. Frost had been a second vice-president of the petitioner. In that year she was elected first vice-president to succeed Thomas H. Franklin, an attorney and member of the legal firm representing the petitioner. Franklin had received a retainer for legal services of $6,000 per year, together with a salary of $10 per week as vice-president. He resigned as vice-president because he felt it would be in the best interests of petitioner for him not to be an officer and its attorney also, since petitioner's aggressive policy in discussing the conduct of state officials in their enforcement of the law at times resulted in libel suits against both petitioner and its officers. *303 Mrs. Frost is a woman of intelligence, strong personality and moral courage. She is familiar with the newspaper business and the policies adopted by petitioner and carried out through its history. She was interested in those policies as a member of the Grice family and the public knew that. As first vice-president of petitioner she was qualified to take over and perform the duties of president in case of the inability of its president. Her present husband is chairman of the board of directors of San Antonio's largest bank and her family occupies a prominent position in the social and business world of that section. She does not maintain a personal office in the offices of petitioner, but attends all directors' meetings and approximately twice a month comes to petitioner's offices for discussion of matters of business and policy in the operation of its papers. She is subject to call by the petitioner. Mrs. Brown is a sister of Mrs. Frost. Upon the death of her husband in 1925, she was elected to succeed him as second vice-president and director of petitioner. Mrs. Brown is an intelligent woman but not as forceful or able as Mrs. Frost. Her home is in northern Texas several hundred *304 miles from San Antonio. She maintains no business office with petitioner and attends only the monthly meetings of the board of directors and any additional special meetings of the board of which she is notified. Of the 1,000 shares of the capital stock of the petitioner outstanding in the taxable year, 248 1/3 shares were owned by Frank G. Huntress and members of his family, and 40 shares were owned by the Thomas H. Franklin estate. The balance, except four shares, was owned by Mrs. Frost, Mrs. Brown and other members of the Grice family connection. Mrs. Frost owned 114 1/3 shares and Mrs. Brown, six shares. During the taxable year petitioner deducted the sum of $3,283.75 paid to Mrs. Frost and the sum of $2,128.75 paid to Mrs. Brown as salaries for services rendered by them to the petitioner in their respective capacities as officers and directors. Respondent disallowed these deductions. The salary of Mrs. Carrie S. Frost to the extent of $3,283.75 for the taxable year was reasonable compensation for the services she actually rendered petitioner during such year and was paid to her for those services. The salary of Mrs. W. Dorsey Brown to the extent of $2,100 for the taxable *305 year was reasonable compensation for the services she actually rendered petitioner during such year and was paid to her for those services. Opinion In a former proceeding by this petitioner, Docket No. 112226, the reasonableness of the salaries paid to Mrs. Frost and Mrs. Brown for services actually rendered by them as officers and directors of the petitioner for the taxable years 1939 and 1940 was contested before this Court. Our determination entered therein on September 30, 1943, was reversed by the Circuit Court of Appeals for the Fifth Circuit, and the case remanded for further consideration of the reasonableness of the salaries paid to Mrs. Frost and Mrs. Brown for those years. Express Publishing Co. v. Commissioner, 143 Fed. (2d) 386. On the rehearing additional evidence relative to the reasonableness of such salaries was presented. The new evidence consisted of the opinion of the secretary and assistant to the president as to the reasonable value of such services, which evidence was excluded on the original hearing. The Circuit Court ruled that this evidence was competent and of probative force. In view of our respect for that court, we did not believe there *306 was any other reasonable alternative open to us under that court's opinion and the new evidence, so we found as a fact that the amounts paid by the petitioner to Mrs. Frost and Mrs. Brown, which were less than the reasonable value as shown by the opinion evidence, were reasonable for the taxable years 1939 and 1940. See Decision on remand, entered in Docket No. 112226, January 16, 1945. The evidence in Docket No. 112226 has been stipulated as the evidence in the present proceeding. On the basis of that record we have made findings of fact consistent with those made on the remand of that proceeding. For the taxable year 1941, now before us, it appears that the salary actually paid to Mrs. Frost for services actually rendered by her to petitioner during the taxable year was less than the value shown by the evidence to be reasonable, therefore the amount actually paid to her by petitioner was reasonable and is deductible. Since the salary paid by petitioner to Mrs. Brown for services actually rendered to it during the taxable year was in excess of the reasonable value shown by the testimony, the excess amount is disallowed as lacking evidentiary support. We conclude that petitioner is *307 entitled to deduct the amount of $5,383.75, salaries paid to Mrs. Frost and Mrs. Brown during the taxable year as ordinary and necessary expenses in carrying on a business under section 23 (a) (1) (A) of the Internal Revenue Code as amended by section 121 of the Revenue Act of 1942. Decision will be entered under Rule 50.